## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEX CICCOTELLI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| EXTENDED STAY AMERICA, INC., | ) |
| BRUCE N. HAASE, DOUGLAS G. GEOGA, | ) |
| ELLEN KESZLER, JODIE W. MCLEAN, | ) |
| KAPILA K. ANAND, RICHARD F. | ) |
| WALLMAN, THOMAS F. O'TOOLE, | ) |
| STEVEN E. KENT, LISA PALMER, and | ) |
| SIMON M. TURNER, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on March 15, 2021 (the "Proposed Transaction"), pursuant to which Extended Stay America, Inc. ("ESA" or the "Company"), and its paired share Real Estate Investment Trust ("REIT"), ESH Hospitality, Inc. ("ESH Hospitality"), will be acquired by affiliates of Blackstone Real Estate Partners IX, L.P. and Starwood Distressed Opportunity Fund XII Global, L.P.

2. On March 14, 2021, ESA's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with ESH Hospitality, Eagle Parent Holdings L.P. ("Parent"), Eagle Merger Sub 1 Corporation ("Merger Sub 1"), and Eagle Merger Sub 2 Corporation ("Merger Sub 2," and

together with Parent and Merger Sub 1, "Eagle"). Pursuant to the terms of the Merger Agreement, ESA's stockholders will receive $19.50 in cash for each share of ESA common stock they own.

3. On April 13, 2021, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of ESA common stock.

9. Defendant ESA is a Delaware corporation and maintains its principal executive offices at 11525 N. Community House Road, Suite 100, Charlotte, North Carolina 28277. ESA's common stock is traded on the NASDAQ, which is headquartered in New York, New York, under the ticker symbol "STAY."

10. Defendant Bruce N. Haase is President, Chief Executive Officer, and a director of the Company.

11. Defendant Douglas C. Geoga is Chairman of the Board of the Company.

12. Defendant Ellen Keszler is a director of the Company.

13. Defendant Jodie W. McLean is a director of the Company.

14. Defendant Kapila K. Anand is a director of the Company.

15. Defendant Richard F. Wallman is a director of the Company.

16. Defendant Thomas F. O'Toole is a director of the Company.

17. Defendant Steven E. Kent is a director of the Company.

18. Defendant Lisa Palmer is a director of the Company.

19. Defendant Simon E. Turner is a director of the Company.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

21. ESA and its brand Extended Stay America® is the leading brand in the mid-priced extended stay segment in the United States with 650 hotels.

22. The Company's subsidiary, ESH Hospitality, is the largest lodging REIT in North America by unit and room count, with 564 hotels and approximately 62,500 rooms in the U.S.

23. The Company also franchises an additional eighty-six Extended Stay America® hotels.

24. On March 14, 2021, ESA's Board caused the Company to enter into the Merger Agreement.

25. Pursuant to the terms of the Merger Agreement, ESA's stockholders will receive $19.50 in cash for each share of ESA common stock they own.

26. According to the press release announcing the Proposed Transaction:

> Extended Stay America, Inc. ("ESA") and its paired-share REIT, ESH Hospitality, Inc. ("ESH" and together with ESA, the "Company") (NASDAQ: STAY) announced today that it has signed a definitive agreement to be acquired by a 50/50 joint venture between funds managed by Blackstone Real Estate Partners ("Blackstone") and Starwood Capital Group ("Starwood Capital") for $19.50 per paired share in an all-cash transaction valued at approximately $6 billion. . . .
>
> The transaction has been unanimously approved by ESA's Board of Directors and has also been approved by ESH's Board of Directors. Completion of the transaction, which is expected to occur in the second quarter of 2021, is contingent upon customary closing conditions, including approval of the Company's stockholders. The transaction is not contingent on receipt of financing. In connection with the transaction, an affiliate of Starwood Capital, which owns approximately 9.4% of Company's outstanding paired shares, has entered into a support agreement whereby it has agreed to vote its shares in favor of the transaction.
>
> The Company does not expect to pay its regular quarterly distribution during the pendency of the transaction except for the previously declared $0.09 distribution on March 26, 2021. However, under the terms of the merger agreement, the acquiror may request that ESA pay a special distribution immediately prior to the closing of up to $1.75 per paired share, in which case the cash consideration paid in the merger will be reduced by the amount of the distribution.
>
> Goldman Sachs & Co. LLC is serving as financial advisor to the Company and Fried, Frank, Harris, Shriver & Jacobson LLP is acting as legal counsel.

*The Proxy Statement Omits Material Information*

27. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

28. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

29. First, the Proxy Statement omits material information regarding the Company's financial projections.

30. The Proxy Statement fails to disclose projected net income.

31. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

32. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Goldman Sachs & Co. LLC ("Goldman Sachs").

33. With respect to Goldman Sachs' Illustrative Premia and Multiples analysis, the Proxy Statement fails to disclose: (i) the net debt used in the analysis; and (ii) the fully diluted shares outstanding used in the analysis.

34. With respect to Goldman Sachs' Illustrative Present Value of Future Share Price Analysis, the Proxy Statement fails to disclose: (i) Goldman's basis for using multiples of 9.0x to 11.0x; (ii) the net debt used in the analysis; (iii) the fully diluted paired shares used in the analysis; and (iv) the individual inputs and assumptions underlying the discount rate used in the analysis.

35. With respect to Goldman Sachs' Illustrative Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values used in the analysis; (iii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the

analysis; (iii) the net debt used in the analysis; and (iv) the fully diluted outstanding shares used in the analysis.

36. With respect to Goldman Sachs' Premia Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; (ii) the premiums paid in the transactions; (iii) the announcement dates of the transactions; and (iv) the closing dates of the transactions.

37. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

39. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and ESA

40. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. ESA is liable as the issuer of these statements.

42. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

43. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

44. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

45. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

46. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

47. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

48. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of ESA within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of ESA and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

52. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 21, 2021

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky
Timothy J. MacFall
Gina M. Serra
Vincent A. Licata
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: sdr@rl-legal.com
Email: tjm@rl-legal.com
Email: gms@rl-legal.com
Email: vl@rl-legal.com

*Attorneys for Plaintiff*